**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| XIAOLING CHE,<br><br>                Plaintiff,<br><br>     v.<br><br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS, and<br>UNINCORPORATED ASSOCIATES<br>IDENTIFIED ON SCHEDULE "A,"<br><br>          Defendants. | Case No. 1:24-cv-9573<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Xiaoling Che ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

### I.      JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has original subject matter jurisdiction over the false designation of origin claim asserted in this action pursuant to the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., (the "Lanham Act"), and 28 U.S.C. §§ 1338(a) and 1331. This Court has supplemental jurisdiction over Plaintiff's Illinois state common law unjust enrichment claim and Illinois state unfair competition claim pursuant to 28 U.S.C. § 1367(a).

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.      INTRODUCTION

3.      Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities,

locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III. THE PARTIES

4.     Plaintiff, Xiaoling Che, is an individual residing at ███████████ ███████████████████████████ and is the owner of the patents asserted in this action.

5.     Plaintiff is the owner of all right, title, and interest in U.S. Patent No. ███████ ("Plaintiff's Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

6.     Plaintiff's Patent issued on ████████. *See* **Exhibit 1**.

7.     Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

8.     Plaintiff's Patent discloses and claims a new ornamental design for ███████████ ███████.

9.     Plaintiff researches, develops, and patents inventions and advancements in the field of ███████████, primarily ███████████████. Among these inventions are ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████. Plaintiff's novel invention and subsequent improvements to the ███████████ has led to Plaintiff filing for and having been issued numerous patents, including the Plaintiff's Patent at issue in this matter.

10.     Plaintiff Patent was licensed to develop a product line which embodies Plaintiff's Patent, under the name the brand ▂▂▂▂▂ and sells a variety of ▂▂▂▂▂▂▂▂▂▂ (collectively, "Plaintiff's Products"), exclusively through its website ▂▂▂▂▂ and through its various stores on third-party marketplaces. Some of Plaintiff's Products are shown below:



*Figure 1, Plaintiff's Products*

11.     Plaintiff provides notice of its patent rights on all of Plaintiff's Products by listing Plaintiff's Patent in the "Ownership and IP Protection" section of Plaintiff's website ▂▂▂▂▂. *See* Figure 2.



*Figure 2, Plaintiff's Disclosure of Plaintiff's Patent on Website*

12.     Plaintiff provides notice of its patent rights on all of Plaintiff's Products by listing

Plaintiff's Patent on the outside packaging of each of Plaintiff's Products. *See* Figure 3.



*Figure 3, Plaintiff's Disclosure of Plaintiff's Patent on Packaging*

13.    Plaintiff sells its products, including products that embody Plaintiff's Patent, exclusively direct-to-consumer through various online marketplaces, including on Amazon.com. Plaintiff's Products, including those which embody Plaintiff's Patent can be found at ████████████████████████████████████.

### IV.    PLAINTIFF'S TRADE DRESS

14.    Plaintiff designs, manufactures, markets, and sells a variety of products related to ████████████████████.

15.    The designs of Plaintiff's ████████████████ are distinctive and non-functional and identify to consumers that the origin of Plaintiff's ████████████████ is, in fact, the

Plaintiff. As a result of at least Plaintiff's continuous and extensive use of the ███████████████; Plaintiff's marketing, advertising, and sales of its ███████████; and the highly valuable goodwill, secondary meaning, and fame acquired as a result, Plaintiff owns trade dress rights in the design and appearance of its ██████████████, which consumers have come to uniquely associate with Plaintiff.

16.     Plaintiff has trade rights in the overall look, design, and appearance of the ████ ██████████████████████, which includes the design and appearance of the curvature, shape, and expansive nature of the █████████████; the design and appearance of the ████████████████████; the design and appearance of the ██████████████████; and the design, appearance, and placement and positioning of the ████████████████, just to name a few (collectively referred to herein as ██████████████████).

Exemplary images of Plaintiff's ██████████████ are shown below:



Exemplary Images of Plaintiff's ████████████████████████████

## V.     JOINDER

17.     Defendants may be joined in a single action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).

18.     Additionally, 35 U.S.C. § 299 governs joinder in patent cases, allowing it if: (1) relief in the same transaction or occurrence relates to the offering for sale or selling of the same accused product or process; and (2) questions of fact common to all defendants will arise in the action. *See* 35 U.S.C. § 299(a).

19.     Because "transaction" and "occurrence" are connected disjunctively in the Rule, cannons of construction dictate that they be given separate meanings. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The general meaning of "occurrence" or whether two products are the "same" means something that simply happens or appears and is not necessarily the product of joint or coordinated motion. *See Id.* and *Spin Master Ltd. et al. v. The P'ships, et al.*, No. 1:22-cv-03904 (N.D. Ill. Nov. 7, 2022) (finding joinder property where plaintiffs' claims arose out of the same occurrence or series of occurrences even if not the same transaction or series of transactions). "[D]eciding whether a product is the 'same' for purposes of joinder under § 299 entails applying a less exacting standard than simply looking to whether a defendant's product is literally identical to the product it allegedly copies." *Aquapaw Brands LLC v. Flopet*, No. 21-cv-00988, 2022 U.S. Dist. LEXIS 134797, at *6 (W.D. Pa. July 29, 2022) (citing *In re Apple Inc.*, 650 F. App'x 771, 774 (Fed. Cir. 2016) and finding that despite cosmetic differences between the different defendants' products, they nonetheless sold the "same" product relevant to the asserted patent). Instead, the proper question is whether "the products are the same in all respects relevant to the patent." *Id*; *see also SitePro, Inc. v. WaterBridge Res., LLC*, No. 6:23-

cv-00115-ADA-DTG, 2024 U.S. Dist. LEXIS 72523, at *13 (W.D. Tex. Apr. 22, 2024) (ensuring that the products do not need to be exactly the same to meet the criteria outlined in 35 U.S.C. § 299(a)).

20.     This case does not involve seeking joinder solely based on allegations that each defendant has infringed the same patent, nor does it solely rely on allegations of patent infringement. Instead, at least as it relates to the patent infringement claims, the accused products share identical components and function in the same way relevant to Plaintiff's Patent. Specifically, each infringing product features the same type of ███████████ surface and other claimed components, thereby infringing Plaintiff's Patent in the same manner.

21.     Further, the Federal Circuit has upheld decisions not to sever defendants in similar situations noting that "judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective. Further, the district court noted that, in this case, 'adjudicating infringement . . . will involve substantially overlapping question of law or fact.'" *In re Google, Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011). The 23 defendants in *In re Google*, like the Defendants here, were each accused of infringing the same patents and the District Court denied a request to sever holding instead that joinder was proper because severance would not promote judicial economy in view of the need to construe the patent claims and evaluate them in view of the prior art. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 09-CV-446, 2010 U.S. Dist. LEXIS 104125, at *15 (E.D. Tex. Sept. 28, 2010). Thus, the District Court held, determining defendant's liability would involve substantially overlapping questions of law and fact and it would waste judicial and party resources to have those issues decided by multiple courts and could lead to inconsistent ruling. *Id.* Therefore, the Plaintiff has properly joined defendants under Fed. R. Civ. P. 20(a)(2) and 35 U.S.C. § 299(a).

22.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## VI.     DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of the Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

24.     The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

25.     Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time

jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*.

26. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." **Exhibit 5** at p. 22 and 11, respectively. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further,

"[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

27.    The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

28.    Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

29.    Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patent, and none of the Defendants are authorized retailers of Plaintiff's Products.

30.    E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

31.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

32.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

33.     E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff,

and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

34.    Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

35.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patent in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

36.    Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – PLAINTIFF'S PATENT

37.    Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

39.     As shown in the claim chart attached as **Exhibit 6**, the products being sold by Defendants incorporate each of the design elements claimed in Plaintiff's Patent. Accordingly, the product being sold by Defendants infringe upon the Plaintiff's Patent.

40.     Specifically, Defendants offer for sale, sell, and/or import into the United States for subsequent resale or use Unauthorized Products that infringe directly and/or indirectly the ornamental design claimed in the Plaintiff's Patent.

41.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe the Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design as well as the lost sales and loss of repeat sales stemming from the infringing acts.

42.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

43.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

44.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## TRADE DRESS INFRINGMENT UNDER §43(a) OF
## THE LANHAM ACT, 15 U.S.C. §1125(a)

45.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraph.

46.     Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacturing and/or importing of the Unauthorized Products violate §43(a) of the Lanham Act, 15 U.S.C. §1125(a), by infringing Plaintiff's ▮▮▮▮▮▮▮ Trade Dress. Defendants' use of Plaintiff's ▮▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Unauthorized Products, at least by creating the false and misleading impression that the Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

47.     Plaintiff's ▮▮▮▮▮▮▮ Trade Dress is entitled to protection under the Lanham Act. Plaintiff's ▮▮▮▮▮▮▮ Trade Dress includes unique, distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used its ▮▮▮▮▮ ▮▮▮▮▮ Trade Dress in the United States. Through that extensive and continuous use, Plaintiff's ▮▮▮▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's ▮▮▮▮. Moreover, Plaintiff's ▮▮▮▮▮▮▮ Trade Dress

16

acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's ███████████████ Trade Dress.

48.     Defendants' use of Plaintiff's ███████████████ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's ███████████████ Trade Dress.

49.     On information and belief, Defendants' use of Plaintiff's ███████████████ Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to Plaintiff's ███████████████ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

50.     Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§1125(a), 1116, and 1117.

## COUNT III
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## UNDER §43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

51.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

52.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Unauthorized Products in direct competition with Plaintiff, violate §43(a) of the Lanham Act, 15 U.S.C. §1125(a), and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair

advantage as compared to Plaintiff through Defendants' use of Plaintiff's ▮▮▮▮▮▮▮ Trade Dress, and because such use is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of Defendants' Unauthorized Products, at least by creating the false and misleading impression that their Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

53. Plaintiff's ▮▮▮▮▮▮▮ Trade Dress is entitled to protection under the Lanham Act. Plaintiff's ▮▮▮▮▮▮▮ Trade Dress includes unique, distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used its ▮▮▮▮▮▮▮ Trade Dress in the United States. Through that extensive and continuous use, Plaintiff's ▮▮▮▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's ▮▮▮▮. Moreover, Plaintiff's ▮▮▮▮▮▮▮ Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's ▮▮▮▮▮▮▮ Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's ▮▮▮▮▮▮▮ Trade Dress.

54. Defendants' use of Plaintiff's ▮▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's ▮▮▮▮▮▮▮ Trade Dress.

55. On information and belief, Defendants' use of Plaintiff's ▮▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to

Plaintiff's ███████████ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

56.     Additionally, despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products that infringe upon Plaintiff's Patent. *See* **Exhibit 2** and **Exhibit 6**.

57.     Upon information and belief, Defendants are foreign entities which advertise, sell, or offer to sell Unauthorized Products through third-party marketplaces.

58.     Upon information and belief, third-party marketplaces, such as Amazon, do not authenticate Defendants' identifies, permitting Defendants to ship goods into the United States, including Unauthorized Products, to distribution centers or shipping warehouses, while not disclosing their identity to U.S. consumers and competing businesses.

59.     Defendants' commercial practices, including obfuscating their identifies while shipping Unauthorized Products into the United States, prevents Plaintiff's from enforcing its rights in Plaintiff's Patent through traditional enforcement mechanisms, as it is unclear under what name the Defendants' are shipping Unauthorized Products into the United States and when.

60.     By selling products which infringe upon Plaintiff's Patent, Defendants are attempting to compete for sales with Plaintiff and Plaintiff's Products with products that Defendants are prohibited from selling under U.S. Patent law.

61.     By selling products which infringe upon Plaintiff's Patent while evading traditional enforcement mechanism to prevent this kind of infringing activity, Defendants are competing for sales against Plaintiff in an unfair and unlawful manner.

62. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of Unauthorized Products creates express and implied misrepresentation that Unauthorized Products were created, authorized, or approved by Plaintiff, allowing Defendants to profit from Plaintiff's goodwill, time, research, and development of Plaintiff's inventions as embodied in Plaintiffs Patent and in Plaintiff's Products, while causing Plaintiff irreparable and immeasurable injury.

63. On information and belief, Defendants have intentionally and blatantly infringed upon Plaintiff's Patent by selling Unauthorized Products, in a manner that evades traditional enforcement mechanisms, to take unfair advantage of the enormous time, effort, and expense Plaintiff has spent to cultivate a successful market for the invention embodied in Plaintiff's Patent and in Plaintiff's Products in online marketplaces.

64. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

65. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts since they are free to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

66. Defendants' acts, as described herein, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' sale and/or offer of sale of products which infringe Plaintiff's Patent constitutes unfair competition.

67.     Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

## COUNT IV
## UNJUST ENRICHMENT – ILLINOIS STATE COMMON LAW

68.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

69.     Plaintiff has spent substantial time, money, and resources in development of the invention embodied in Plaintiff's Patent.

70.     Plaintiff has spent substantial time, money, and resources in developing Plaintiff's ███████████████ Trade Dress.

71.     Plaintiff's Patent greatly improves upon movable ███████████ technology.

72.     Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Products, including selling Plaintiff's Products directly to consumers and through authorized retailers.

73.     Defendants traded upon Plaintiff's good will, reputation, research, and development by selling products which infringed upon Plaintiff's Patent and ███████████ ███ Trade Dress.

74.     Defendants, by selling Unauthorized Products, eroded Plaintiff's market share in the ███████████ and ██████ market.

75.     Unauthorized Products include the unique components disclosed in Plaintiff's Patent.

76.     Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent and ███████████████ Trade Dress and by selling

those products they were eroding Plaintiff's market share and trading upon its good will, reputation, research, and development.

77.     Defendants, by offering for sale and selling Unauthorized Products, improved their own good will and market share by trading upon the good will, reputation, research, and development of Plaintiff.

78.     Defendants, by offering for sale and selling Unauthorized Products through online marketplaces without having any physical location and limited financial accounts in the United States, seek to compete for customers in the U.S. market without subjecting themselves to the laws of the United States or notions of fair competition.

79.     On information and belief, Defendants have sold Unauthorized Products, further eroding Plaintiff's market share and trading upon its good will, reputation, research, and development of Plaintiff.

80.     Plaintiff has never received any relief for the erosion to its market share or any compensation from Defendants for their use of Plaintiff's good will, reputation, research, and development.

81.     Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what should have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed Plaintiff's Patent and ▮▮▮▮▮▮▮▮▮ Trade Dress, and competing against Plaintiff's in the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮ markets.

## COUNT V
## UNFAIR COMPETITION – ILLINOIS STATE COMMON LAW

82.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

83.     Plaintiff, by obtaining Plaintiff's Patent, should be the exclusive retailer of products which embody Plaintiff's Patent.

84.     Plaintiff should also have exclusive rights over the use of its ███████████ Trade Dress.

85.     Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patent and ███████████ Trade Dress.

86.     Defendants, by selling Unauthorized Products, are eroding what should be Plaintiff's exclusive market share, due to Plaintiff's acquisition of Plaintiff's Patent and Plaintiff's ███████████ Trade Dress.

87.     By selling Unauthorized Products, Defendants are trading upon Plaintiff's good will, reputation, research, and development.

88.     Defendants, through the aforementioned actions, have and continue to engage in common law unfair competition under Illinois common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

    b.  Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5) That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, including Defendants' profits pursuant to 35 U.S.C. § 289 and any other damages as appropriate under 35 U.S.C. § 284, together with interests and costs.

6) That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7) A finding that this case is exceptional under 35 U.S.C. § 285.

8) An injunction against further infringement of Plaintiff's ███████ Trade Dress and further acts of unfair competition by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all other in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the Unauthorized Products, or any other products that use a copy, reproduction, or colorable imitation of Plaintiff's ███████ Trade Dress, pursuant to at least 15 U.S.C. §1116.

9) An order directing Defendants to recall all Unauthorized Products sold and/or distributed and provide a full refund for all recalled Unauthorized Products.

10)    An order directing Defendants to publish a public notice providing proper attribution of Plaintiff's ▮▮▮▮▮▮▮▮ Trade Dress to Plaintiff, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Unauthorized Products are recalled and to whom the Unauthorized Products are sold.

11)    A finding that Defendant engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

12)    A finding that Defendants were unjustly enriched under Illinois common law.

13)    A finding that Defendant engaged in unfair competition under Illinois common law.

14)    That Plaintiff be awarded its reasonable attorneys' fees and costs.

15)    Award any and all other relief that this Court deems just and proper.

<b>JURY DEMAND</b>

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 4, 2024                     Respectfully submitted,

                                           /s/Edward L. Bishop
                                           Edward L. Bishop
                                           ebishop@bdl-iplaw.com
                                           Nicholas S. Lee
                                           nlee@bdl-iplaw.com
                                           Benjamin A. Campbell
                                           bcampbell@bdl-iplaw.com
                                           Sameeul Haque
                                           shaque@bdl-iplaw.com
                                           BISHOP DIEHL & LEE, LTD.
                                           1475 E. Woodfield Road, Suite 800
                                           Schaumburg, IL 60173
                                           Tel.:   (847) 969-9123
                                           Fax:    (847) 969-9124

                                           *Counsel for Plaintiff, Xiaoling Che*